UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

PAMELA KNIGHT                                                                                    PLAINTIFF

V.                                                            CIVIL ACTION NO. 3:09CV339 DPJ-FKB

MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY                                    DEFENDANT

ORDER

This employment dispute is before the Court on motion of Defendant for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff Pamela Knight has responded in opposition. The Court, having considered the memoranda and submissions of the parties and applicable law, finds that Defendant's motion should be granted in part and denied in part as set forth herein.

I.       Facts and Procedural History

Plaintiff Pamela Knight began her employment with the Mississippi Department of Public Safety ("DPS") in November 1998 and currently holds the position of Chief Fiscal Officer. In November 2005, Plaintiff filed suit against her employer for sexual harassment and later entered a settlement agreement with Defendant as to her claim. In this agreement, Defendant promised to allow Plaintiff to work 7:00 a.m. to 4:00 p.m., consider Plaintiff for available promotions, render a monetary settlement, and issue a letter of apology. Pl.'s Ex. A-1.

During the pendency of her lawsuit and after the settlement, Plaintiff experienced several problems at work, primarily with her supervisor, Sam Albritton. Plaintiff testified that Albritton told her, in June or July of 2007, "that he was looking for a reason to fire [her] and that he was going to find one." Pl.'s Dep. at 43. Albritton would barge into her office, without knocking, and go through files in her computer, desk, and filing cabinet. *Id.* at 27, 44. She testified that he

would yell at her for no apparent reason and she felt physically threatened by him. *Id.* at 28. Plaintiff also claims that Albritton would not allow her to work from 7:00 a.m. to 4:00 p.m. as called for in her settlement agreement. *Id.* at 18. In addition, Plaintiff felt singled out when Defendant told her she would be moved to a cubicle. *Id.* at 22-23. She was, in fact, not moved to a cubicle. *Id.*

In November 2007, Plaintiff filed three charges of discrimination with the Equal Employment Opportunity Commission (EEOC) alleging retaliation, in which she detailed the treatment she received from Albritton. She filed a fourth retaliation charge in August 2008, claiming that Defendant failed to consider her for promotions to Division Director II and Bureau Director I. Essentially, Plaintiff maintains that Defendant posted only vacant positions for which she was not qualified and neglected to post vacant positions for which she was qualified, as a way to side-step its promise to consider her for promotions. After receiving a notice of her right to sue from the EEOC, Plaintiff filed the instant lawsuit in state court alleging retaliation. Defendant removed the case to federal court. The Court has personal and subject matter jurisdiction, Defendant's motion for summary judgment is fully briefed, and the Court is prepared to rule.

II.     Analysis

    A.     Summary Judgment Standard

Summary judgment is warranted under Rule 56 of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient

showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id*. at 324. Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods. Inc*., 530 U.S. 133, 150 (2000).

    B.    Retaliation

Defendant first moves for summary judgment as to Plaintiff's claim of retaliation. Title VII's anti-retaliation provision makes it "an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has . . . testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). A plaintiff may prove discrimination through either direct or circumstantial evidence. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000).

Plaintiff's case is built on circumstantial evidence, not direct evidence of retaliation. A circumstantial case of retaliation under Title VII first requires proof of a prima facie case. Thus, Plaintiff must show the following: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the employment action. *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008). Defendant does not contest that Plaintiff engaged in a protected activity, focusing instead on the adverse employment action and casual connection prongs of the analysis.

To establish the second element of her prima facie case of retaliation, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). The Supreme Court emphasized the materiality requirement, finding it "important to separate significant from trivial harms." *Burlington*, 548 U.S. at 68. Moreover, Title VII is not a general civility code designed to remedy "those petty slights or minor annoyances that often take place at work." *Id.*

The third element of the prima facie case requires Plaintiff to establish a causal link between her protected activity and the materially adverse employment action. "Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation." *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997) (citing *Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir.1993); *see also McCoy v. City of Shreveport*, 492 F.3d 551, 561 n.28 (5th Cir.

2007) (noting that the plaintiff had demonstrated that the decisionmakers knew of her protected activity and took adverse employment action against her in close temporal proximity to her making complaints).[1]

With this framework in mind, the Court looks to Plaintiff's specific allegations. Plaintiff claims that she suffered adverse employment actions by (1) Defendant's not considering her for the Division Director II and Bureau Director I positions; (2) Mr. Albritton's hostility toward her; (3) Defendant's informing her that she would be moved to a cubicle while other employees were not informed of being moved; and (4) Mr. Albritton's refusal to comply with the settlement agreement and allow Plaintiff to work from 7:00 a.m. to 4:00 p.m.  Resp. at 4-5.

      1.      Division Director II and Bureau Director I Positions

Plaintiff first claims Defendant retaliated against her by not considering her for the Division Director II and Bureau Director I positions. These two job titles were used to describe a single, federally funded, time-limited supervisory position in the Public Safety Planning Division. Defendant's human resources director Natalie Holmes testified in her deposition that Albritton, as Director of Public Safety Planning, selected Amy Carruth for the Division Director II position. This position was not advertised; it was a non state-service grant position, created "to handle the fiscal accounting of Public Safety Planning, which at the time was under some scrutiny from the federal government to make sure the accounting was handled to be [sic] in a more efficient manner." Holmes Dep. at 8. When Carruth became Administration Operations Director, she

---

[1] Although Defendant's argument does not progress past the prima facie stage, it does note that Plaintiff must ultimately prove that "but for" the protected activity, the adverse action would not have occurred. However, in *Smith v. Xerox Corp.*, --- F.3d ----, 2010 WL 1052837, at *4-5 (5th Cir. 2010), the Fifth Circuit held that the mixed motive analysis applies in the Title VII retaliation context.

recommended that Albritton hire her friend Sonya Toaster to assume Carruth's prior job duties at Public Safety Planning under the title Bureau Director I. Carruth Aff. ¶ 4. Toaster had held a similar position with the Mississippi Emergency Management Agency and had prior experience as a supervisor in the areas of fiscal management and personnel. Holmes Dep. at 14. These underlying facts are not disputed in the record, and the decisions to hire Carruth and Toaster for these non-state-funded positions do not constitute materially adverse employment actions.

The failure to promote has historically been considered an ultimate employment decision. *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002), *abrogated on other grounds by Burlington*, 548 U.S. 53 (2006). However, under *Burlington*, the issue is whether a reasonable employee would be dissuaded from complaining, which is a context-driven analysis. 548 U.S. at 69 ("We phrase the standard in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters."). In this case, Plaintiff was apparently not considered for these non-state-funded positions. The unrebutted evidence demonstrates that non-state-funded positions enjoy less job security; Plaintiff failed to apply for five other non-state-funded positions that were advertised; Plaintiff informed Carruth that she was not interested in such positions; Carruth and Toaster were qualified; and Plaintiff expressed disinterest in supervisory positions such as these. A reasonable employee would not be dissuaded from protected activity simply because she was not considered for a type of position she did not want. These same facts belie a causal connection, even assuming that an adverse employment action has been stated.

      2.     Albritton's Conduct

Albritton served as Director of the Public Safety Planning Division from March 2007 to June 2008. Albritton Aff. Def.'s Ex. 4. The unrebutted evidence is that he was hired to address numerous employee-related problems, including employee time, schedules, alcoholism, and improper computer usage. *Id*. As Albritton states in his affidavit, he was hired as an independent contractor "with a mandate to clean up, organize and restructure the division." *Id*. Plaintiff's own November 16, 2007, EEOC charge is consistent with the rest of the record in describing Albritton as a strict taskmaster:

> Mr. Albritton makes hourly hall monitoring walks throughout the office. If he notices that someone is not in their office or work area, he hunts around the office for that employee. Since Mr. Albritton did not see me in my office, he was looking for me. He abruptly opened the door to the office where I was. He said he was curious, he wanted to know who was in the office, he wanted to know what was going on, and wanted to know why the door was closed. I was frightened and became upset by his behavior. I had trouble returning my attention to the meeting.

Def.'s Ex. 14. Likewise, Carruth, in her affidavit, mentioned that Albritton "was stern and straightforward with all employees regarding his mandate to improve the division." Def.'s Ex. 3.

While Albritton may not have been the world's most popular boss, "Title VII . . . does not set forth 'a general civility code for the American workplace.'" *Burlington*, 548 U.S. at 68 (*quoting Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)). Moreover, Title VII offers no protection for acts that constitute "petty slights or minor annoyances that often take place at work and that all employees experience." *Id*. Plaintiff's general behavioral complaints against Albritton such as entering offices without warning and checking computers are non-actionable petty slights for which Plaintiff has not established a causal link.

       3.      Move to a Cubicle

Plaintiff also claims that Defendant told her she would be moved to a cubicle, though she admits she was never actually moved. Being told of a possible move to a cubicle, while never actually being moved, is not a materially adverse employment action. *See, e.g.*, *Guimaraes v. NORS*, No. 09-12569, 2010 WL 529296, at *4 (11th Cir. Feb. 16, 2010) (affirming finding by district court that the defendant's movement of the plaintiff to a cubicle farther away from other employees was not an adverse employment action); *Gilbert v. Des Moines Area Cmty. Coll.*, 495 F.3d 906, 918 (8th Cir. 2007) (finding the plaintiff's move to a cubicle following a demotion did not constitute an actionable harm).

        4.    Work Hours

When Albritton took over, he changed the work schedules in a way that would have prevented Knight from working her preferred shift from 7:00 a.m. to 4:00 p.m. Significantly, the settlement agreement from Plaintiff's initial Title VII suit provided that she would be allowed to maintain this schedule. She now claims that she was not allowed to work that shift in retaliation for her protected activity. Defendant makes no argument as to whether this conduct, if true, would constitute a materially adverse employment action. *See Burlington*, 548 U.S. at 69 (2006) (noting that context matters and observing that a "schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children."). Instead, Defendant's only argument as to this portion of the claim is a factual attack on Plaintiff's proof.

Holmes testified that Knight's schedule was "never changed." Holmes Dep. at 16. She explained that, while there "was a change in schedules for most individuals to 8:00 to 5:00, Ms. Knight never had to participate in that. She was allowed to work the schedule that she had

previously." *Id.* Amy Carruth and Sam Albritton also attest that Knight was allowed to maintain her 7:00 a.m. to 4:00 p.m work schedule. Carruth Aff. Def.'s Ex. 3; Albritton Aff. Def.'s Ex. 4. In addition, Defendant has presented Plaintiff's handwritten and electronic time records demonstrating her start and finish times throughout the relevant time frame. Those records purport to show that she consistently reported around 7:00 a.m. and often departed around 4:00 p.m. Def.'s Ex. 5. While this evidence is fairly strong, the records also show that Plaintiff often worked until 5:00 p.m. or later. *Id.* In addition, Plaintiff clearly testified in her deposition that,

> when Mr. Albritton came in, everybody had to work 8:00 to 5:00. So that's what I had to do; I had to change my schedule and work 8:00 to 5:00. He did not make an exception for me under no circumstances, and he did not change the work schedule.
> He came in May of 2007. He decided to change the work schedule to allow for flex time starting in January of 2008. So from May through December of 2007, I had to work 8:00 to 5:00 like everyone else. There was no exception made for me.

Pl.'s Dep. at 18.

The problem with Defendant's factual attack is that it is factual. The Court cannot weigh the evidence, which must be viewed in a light most favorable to the non-moving party. *Reeves*, 530 U.S. at 150. As such, a question of fact exists as to whether Plaintiff was forced to work a shift that was inconsistent with her settlement agreement.[2]

Finally, although Defendant made no causation arguments specific to the scheduling portion of the claim, Plaintiff testified that when she informed Albritton the schedule violated her

---

[2] Even with disputed facts, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citations omitted) (finding no genuine dispute where video contradicted plaintiff's evidence). In this case, Plaintiff's testimony coupled with the variations in her start and stop times leave just enough doubt to prevent finding for Defendant as a matter of law.

settlement, he yelled at her and told her he did not care. She also observed in her Response that a similarly situated employee was allowed to alter his schedule. Defendant's Reply failed to address these issues and returned instead to the sole contention that it simply did not happen. Because questions of fact exist, summary judgment should be denied as to this portion of the claim.

      C.      Punitive Damages

DPS maintains that, as a government agency, it is exempt from punitive damages. *See Oden v. Oktibbeha County, Miss.*, 246 F.3d 458, 465-66 (holding that a Title VII plaintiff is precluded from recovering punitive damages against a government agency) (citing 42 U.S.C. § 1981a(b)(1) ("A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision).")); *see also* Miss. Code Ann. § 11-46-15(2) (barring recovery of punitive damages under the Mississippi Tort Claims Act). Plaintiff has chosen not to contest this issue in her response, and the Court concludes that Defendant's argument is well-taken.

III.    Conclusion

Based on the foregoing, the Court finds that Defendant's motion should be granted in part and denied in part.

**SO ORDERED AND ADJUDGED** this the 13th day of May, 2010.

                                  s/ *Daniel P. Jordan III*
                                  UNITED STATES DISTRICT JUDGE